UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STANLEY LAWRENCE DISTEFANO,
JR.,

                            Appellant,

        -against-                                        1:19-CV-1258 (LEK)

ENDURANCE AMERICAN INSURANCE
COMPANY, *et al.*,

                            Appellees.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

This bankruptcy appeal involves debtor Stanley Lawrence DiStefano's claim of

exemption with regard to property he and his wife own as tenants by the entirety in Hawaii. Dkt.

Nos. 1 ("Notice of Appeal"); 3-24 ("Bankruptcy Order"). Endurance American Insurance

Company ("Endurance") objected to DiStefano's claim of exemption in the United States

Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court"), and the

Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, sustained that objection.

See Bankruptcy Order; see also In re DiStefano, 610 B.R. 419 (Bankr. N.D.N.Y. 2019). On

appeal, DiStefano asserts that the Bankruptcy Court erred in sustaining Endurance's objection,

Dkt. Nos. 9 ("Appellant Brief"); 12 ("Reply"), while Endurance, unsurprisingly, seeks

affirmance, Dkt. No. 11 ("Appellee Brief"). For the reasons that follow, the Court affirms the

decision of the Bankruptcy Court.

## II.    BACKGROUND

This appeal seeks to resolve the status of a condominium in Hawaii that DiStefano and his wife Christi acquired in 1988 as tenants by the entirety (the "Condo"). Dkt. No. 3-19 ("Joint Statement of Stipulated Facts" or "Joint Stip") ¶¶ 18-20;[1] see also Dkt. No. 19-3, Ex. D ("Deed"). The relevant facts are largely uncontested.

### A.  The Agreement

DiStefano was in the construction business. He served as managing member of Green Island Construction Group, LLC ("Green Island"), a company that built roads and other large-scale construction projects. Appellant Br. at 3; Bankruptcy Order at 2. In order to bid on and successfully win construction projects, Green Island required performance bonds. Appellant Br. at 3; Bankruptcy Order at 2. Endurance provided those bonds. Appellant Br. at 3; Bankruptcy Order at 2. Green Island, of course, promised to repay Endurance for any payments Endurance made on the bonds, but Endurance also asked for—and received—additional protection. Appellant Br. at 3; Bankruptcy Order at 2.

Specifically, DiStefano and six of his relatives by blood or marriage—including, crucially for this appeal, DiStefano's wife Christi—personally guaranteed Green Island's debts to Endurance. Appellant Br. at 3; Bankruptcy Order at 2. In 2011, they each signed a General Agreement of Indemnity that named Endurance as surety, Green Island as principal, and DiStefano, Christi, and the rest of his relatives as indemnitors. Dkt. No. 19-3, Ex. E

---

[1]  The Court notes that paragraphs eighteen through twenty of the Joint Stip merely say that the "Debtor represents" the facts within these paragraphs, rather than stating the facts affirmatively and without qualification as the rest of the Joint Stip does. Joint Stip ¶¶ 18–20. However, because Endurance has not contested these facts either below or before this Court, the Court accepts them as true for the purposes of this appeal.

("Agreement") at 13.[2] The Agreement described DiStefano and each of his relatives as "individual indemnitor[s]," id. at 12–13, but it also stated that each of the indemnitors would be jointly and severally liable for any payments owed to Endurance, id. ¶ 3.3.[3]

Before the Agreement was signed, DiStefano disclosed to Endurance that he and his wife owned the Condo. Dkt. No. 3-20 ("DiStefano Affidavit") ¶ 2. He offered to grant Endurance a mortgage on the condo in exchange for Green Island's performance bonds, but Endurance declined that offer in favor of other consideration. Id. ¶ 3.

**B. The Bankruptcy Proceedings**

In 2016, DiStefano's sister Janice commenced this case by filing an involuntary Chapter 7 petition against him in the Bankruptcy Court. Joint Stip ¶ 1. In June 2017, DiStefano filed initial schedules with the Bankruptcy Court in which he listed his assets and claimed exemptions from the bankruptcy proceedings for certain of those assets. Id. ¶ 4. These initial schedules listed

---

[2] Paragraph 4.3 of the Agreement states:
> PAYMENTS - In the event of any Loss by Surety, the Principal and each of the other Indemnitors agree to immediately reimburse Surety for any and all payments made by Surety, plus interest from the date of Surety's payment at the rate of 9% per annum or the maximum rate allowable by law, whichever is less.

[3] Section 3 of the Agreement states:
> Principal and each of the other Indemnitors, and their successors and assigns, agree: . . . to be jointly and severally liable with the Principal and each of the other Indemnitors for all of the Principal's and such other Indemnitors' obligations to Surety, including, but not limited to, those arising under this Agreement. Principal and each of the other Indemnitors explicitly confirm their joint and several liability for Bonds issued by Surety as provided in this Agreement. The Principal and each of the other Indemnitors shall remain responsible to Surety under this Agreement regardless of any changes in the relationship between or among the Principal and any of the other Indemnitors.

the Condo as having a value of $1,614,800 but did not claim any exemption with respect to the Condo. Id.

In December 2017, Endurance filed a claim against DiStefano in the Bankruptcy Court for $1,769,317.00. Appellant Br. at 4; Bankruptcy Order at 4.

In May 2018, DiStefano filed an amended schedule with the Bankruptcy Court that claimed an exemption for the Condo "pursuant to 11 U.S.C. § 522(b)(3)(B) and Haw. Rev. Stat. § 509-2." Joint Stip ¶ 13; see also Dkt. No. 19-3, Ex. C ("Second Amended Schedules"). In the Second Amended Schedules, DiStefano claims that the Condo is exempt from process by the Bankruptcy Court for "100% of [its] fair market value, up to any applicable statutory limit." Joint Stip ¶ 13.

Endurance filed timely objections (the "Objections") to DiStefano's claimed exemption for the Condo. Id. ¶ 16.[4]

### C.  The Bankruptcy Order

In the Bankruptcy Order, Judge Littlefield sustained Endurance's Objections to DiStefano's attempt to exempt the Condo from process by the bankruptcy. Bankruptcy Order at 19. In doing so, he addressed five issues.

First, Judge Littlefield held that even if DiStefano had acted in bad faith in claiming an exemption for the Condo, a debtor's bad faith did not defeat a claimed exemption. Id. at 8–9.

---

[4]  The bankruptcy trustee, Douglas J. Wolinsky, Jr. (the "Trustee") and Nancy Burbridge—one of DiStefano's other sisters and co-indemnitors—also filed objections to DiStefano's claim of an exemption for the Condo. Joint Stip ¶ 16. However, because Burbridge and the Trustee failed to fully brief their objections in the Bankruptcy Court, Judge Littlefield did not address their arguments in the Bankruptcy Order. Bankruptcy Order at 4 n.4. For this reason, Burbridge's and the Trustee's putative objections are not at issue in this appeal.

Second, Judge Littlefield rejected Endurance's argument that DiStefano was limited to the exemptions allowed him under New York state law, and that, therefore, the Condo was not exempt. Id. at 9–11.

Third, the Bankruptcy Court determined that the law of Hawaii—the situs of the property—rather than New York—the debtor's domicile—governed the question of whether DiStefano and his wife's tenancy by the entirety in the condo qualified for the exemption. Id. at 11–13.

Fourth, Judge Littlefield held that, under Hawaii law, DiStefano's and his wife's signatures on the Agreement allowed Endurance to "pierce the envelope of protection provided by the [tenancy by the entirety]." Id. at 13. This meant that the Condo was not exempt from process merely because DiStefano and his wife held the property as tenants by the entirety. Id. at 13–16.

Fifth, the Bankruptcy Court ruled that Endurance did not need a court judgment against DiStefano and his wife in order to reach their tenancy by the entirety interest in the Condo. Id. at 16–19.

In light of this analysis, Judge Littlefield sustained Endurance's Objections to the exemption. DiStefano then timely filed this appeal.

### D.  DiStefano's Appeal

DiStefano raises two issues on appeal.

First, he argues that the Bankruptcy Court erred in its fourth holding, when it determined that the tenancy by the entirety did not protect the Condo from Endurance's claims against DiStefano because both DiStefano and his wife had signed the Agreement. Appellant Br. at 12–

18. Because of this error, says DiStefano, the Bankruptcy Court should not have sustained Endurance's Objection to the exemption DiStefano claimed for the Condo. Id.

Second, DiStefano argues his discharge by the Bankruptcy Court —which occurred after DiStefano had already filed this appeal—means that there is no longer any joint liability upon which Endurance can base its claim to the tenancy by the entirety. Id. at 18–21. Therefore, says DiStefano, even though the Bankruptcy Court has not previously ruled on this issue, this Court should overrule the Bankruptcy Court's decision to sustain Endurance's Objection, reverse the Bankruptcy Order, and uphold the exemption. Id.[5]

## III.   LEGAL STANDARD

District courts have jurisdiction to hear both interlocutory and final appeals from orders of the bankruptcy court. See 28 U.S.C. § 158(a). In exercising its appellate jurisdiction, the district court distinguishes between findings of fact and conclusions of law, reviewing the former for clear error and the latter de novo. See $R^2$ Invs., LDC v. Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012); see also United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Where a finding is mixed—i.e., it contains both conclusions of law and factual findings—the de novo standard applies. See Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994). After applying these standards to the questions of law and fact, the district court can "affirm, modify, or reverse a bankruptcy court's judgment, order, or

---

[5]  Because DiStefano challenges only the fourth holding of the Bankruptcy Order, the other portions of that order are not at issue in this appeal.

decree[,] or remand with instructions for further proceedings." In re Indicon, 499 B.R. 395, 400

(D. Conn. 2013) (quoting former Federal Rule of Bankruptcy Procedure 8013).

## IV.   DISCUSSION

The Court addresses DiStefano's two principal arguments, in turn. As both involve pure

questions of law, the Court considers each de novo.

### A.   Whether the Agreement Defeats the Tenancy by the Entirety

Judge Littlefield found that DiStefano's tenancy by the entirety interest in the Condo was

not "exempt from process pursuant to Hawaiian law," Bankruptcy Order at 13, because

DiStefano and his wife engaged in "joint action" sufficient to "enter the [tenancy by the

entirety's] envelope of protection" when they both signed the Agreement, id. at 16. DiStefano

argues that this conclusion was error. Appellant Br. at 12–18. The Court disagrees.

The Court begins by briefly addressing the burden of proof. "Federal Rule of Bankruptcy

Procedure 4003(c) provides that the objecting party . . . bears the burden of proof and must show

by a preponderance of the evidence that a claimed exemption was improper." See In re Ventura,

No. 10-79815, 2011 WL 1979864, at *2 (Bankr. E.D.N.Y. May 20, 2011). Additionally, "once

the objecting party presents a prima facie case that the exemption has been improperly claimed,

the burden then shifts back to the debtor to come forward with evidence to demonstrate that the

exemption is proper." In re Coolbaugh, 250 B.R. 162, 167 n.9 (Bankr. W.D.N.Y. 2000). The

Court applies this framework as it moves through this appeal.[6]

---

[6] DiStefano asserts that one of the ways in which the Bankruptcy Court erred was by
failing to mention or properly allocate the burden of proof. Appellant's Br. at 12–13; Reply at 2–
4. However, because the Court conducts de novo review of this issue and arrives at the same
conclusion as the Bankruptcy Court, it discerns no error in that court's allocation of the burden.

Next, the Court provides some additional background about the relevant exemption statutes. DiStefano claims an exemption for the Condo under 11 U.S.C. § 522(b)(3)(B) and Haw. Rev. Stat. § 509-2. Joint Stip. ¶ 13. "Section 522 of the Bankruptcy Code allows individual debtors to exempt certain assets from administration as property of the bankruptcy estate." In re Martiny, 378 B.R. 52, 53 (Bankr. W.D.N.Y. 2007) (citing 11 U.S.C. § 522). Specifically, § 522(b)(3)(B) allows an exemption for "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." § 522(b)(3)(B). At this stage of the proceedings, it is undisputed that Hawaii law is the "applicable nonbankruptcy law." In turn, then, Hawaii Revised Statutes § 509-2 outlines the procedures for the creation of tenancies by the entirety in Hawaii. See Haw. Rev. Stat. § 509-2;[7] see also In re Lee, 889 F.3d 639, 641 (9th Cir. 2018) (citing Haw. Rev. Stat. § 509-2 for the proposition that "Hawaii law allows for the creation of tenancy-by-the-entirety interests"). These statutes form the basis for DiStefano's claimed exemption but are not the sole authorities necessary to resolve this dispute. As the Bankruptcy Court noted, it appears that "common law that controls the nature and limitations of [tenancies by the entirety] in Hawaii." Bankruptcy Order at 13 n.17.

---

[7] § 509-2(a) provides, in relevant part:

> Land, or any interest therein, or any other type of property or property rights or interests or interest therein, may be conveyed by a person to oneself and another or others . . . as tenants by the entirety, or by . . . tenants by the entirety to themselves or themselves and another . . . or by one tenant by the entirety to the tenant's spouse or reciprocal beneficiary of all of the tenant's interest or interests, without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a . . . tenancy by the entirety . . . or single ownership, as the case may be, if the tenor of the instrument manifestly indicates such intention.

With respect to the Hawaii common law of tenancies by the entirety, the Bankruptcy

Court determined—and neither party disputes—that Sawada v. Endo, 561 P.2d 1291 (Haw.

1977) is the most on-point case. See Bankruptcy Order at 13 (noting that "[b]oth sides cite to

Sawada v. Endo as controlling law" and relying heavily on Sawada in its analysis); Appellant Br.

at 9 ("The [Bankruptcy Order] reviewed what appears to be the only relevant case decided by the

Hawaii courts[:] Sawada v. Endo . . . ."); Appellee Br. at 7–8 (citing Sawada for principles of

Hawaii tenancy by the entirety law). The Bankruptcy Order introduced Sawada as follows:

> Masako Sawada and Helen Sawada were injured when they were
> struck by a car driven by Kokichi Endo. Both were awarded
> judgments against Endo. During the litigation, Endo and his wife
> conveyed real property, owned by them as tenants by the entirety, to
> their sons. The Sawadas sued to set aside the transfer. The trial court
> denied the request. The Supreme Court of Hawaii held, in affirming
> the refusal to overturn the conveyance, that a [tenancy by the
> entirety] "is not subject to the claims of the creditors of one of the
> spouses during their joint lives . . . ." [Sawada] at 617, 561 P.2d
> 1291. The decision recognized that one of the principal purposes
> behind a [tenancy by the entirety] is to provide "a broad immunity
> from claims of separate creditors . . . ." Id. (citation omitted). The
> court further held that, "Neither husband nor wife has a separate
> divisible interest in the property held by the entirety that can be
> conveyed or reached by execution." Id. at 614, 561 P.2d 1291. The
> Hawaii Supreme Court analyzed various theories regarding a
> [tenancy by the entirety], based on a 1951 scholarly article, that
> divided the possible avenues into four camps. The appellate court
> aligned Hawaii with the jurisdictions in the so-called Group III
> which held "an attempted conveyance by either spouse is wholly
> void, and the estate may not be subjected to the separate debts of
> one spouse only." Id. at 612, 561 P.2d 1291 (citations omitted). At
> that time, the court concluded the jurisdictions in that group were
> Delaware, District of Columbia, Florida, Indiana, Maryland,
> Missouri, Pennsylvania, Rhode Island, Vermont, Virginia, and
> Wyoming. Id. at 612, 561 P.2d 1291. The court stated "we are
> placing our stamp of approval upon what is apparently the prevailing
> view of the lower courts of this jurisdiction." Id.

Bankruptcy Order at 13–14. The Bankruptcy Court continued, "It is clear from Sawada that the

Property is immune from any process of a creditor of one of the spouses[;] [w]ith only one

spouse's liability, the Property would be protected." Id. at 14. However, interpreting Sawada, the Bankruptcy Court determined that a tenancy by the entirety "is not immune if there has been '*joint action* of the spouses.'" Id. (quoting Sawada, 561 P.2d at 1296) (emphasis added). This "joint action" requirement is the crux of the issue. See Appellee Br. at 12 ("[T]he primary contested issue [is] whether this case presents the 'joint action' necessary to defeat the [tenancy by the entirety] exemption.").

The parties disagree—as they did before the Bankruptcy Court—about what sort of "joint action" allows a creditor to gain access to property held by spouses as tenants by the entirety. See Bankruptcy Order at 14 ("[T]he parties disagree what sort of joint action would be required to allow a creditor to issue process."). Endurance argues that DiStefano's and his wife's execution of the Agreement—in which they agreed to joint and several liability—satisfies Sawada's joint action requirement. Appellee Br. at 6–13. By contrast, Distefano argues that this is not enough, and he instead suggests that the joint action requirement requires some explicit acknowledgement that the spouses are together encumbering the tenancy by the entirety. See Appellant Br. at 16–17 (arguing that Endurance would have satisfied the joint action requirement if DiStefano and his wife had "sign[ed] a separate guaranty that made clear that they had, as husband and wife, joint liability to Endurance" or "sign[ed] a separate document that expressly recognized that the [tenancy by the entirety] interest in the Hawaii Condo was being made subject to a claim by Endurance, in other words, expressly changing the attributes of the [tenancy by the entirety] [by] agreeing that Endurance could execute and levy on the property"). The Court finds Endurance's position more persuasive.

While Hawaii law does not expressly address the question of whether, when spouses agree to joint and several liability under an indemnity agreement, they satisfy Sawada's joint

action requirement, what case law there is indicates that they do. <u>Sawada</u> itself states that "the interest of [either spouse] in an estate by the entireties is not subject to the claims of his or her *individual* creditors during the joint lives of the spouses" but that the "consent of both spouses" allows creditors to "lev[y] upon [the tenancy by the entirety] for the separate debts of either spouse." <u>Sawada</u>, 561 P.2d at 1295–96 (emphasis in original). Here, of course, both DiStefano and his wife consented to cover Endurance's losses when they both executed the Agreement in favor of Endurance. <u>See</u> Joint Stip ¶ 24; Agreement at 13. It appears to the Court conceptually difficult to characterize two spouses signing the same agreement on the same date as the kind of "unilateral" or "independent[]" act that would prevent a joint creditor from reaching the spouses' tenancy by the entirety. <u>See</u> <u>Lambert v. Lua</u>, 990 P.2d 126, 134 (Ct. App. 1999) ("[T]here can be no severance of an estate by the entireties by the unilateral act of either spouse."); <u>In re Sunra Coffee LLC</u>, No. 09-1909, 2011 WL 4963155, at *6 (Bankr. D. Haw. Oct. 18, 2011) ("[N]either spouse acting independently of the other can voluntarily or involuntarily transfer or encumber the [tenancy by the entirety] property"), <u>aff'd sub nom.</u> <u>In re Sunra Coffee, LLC</u>, No. 10-ADV-90009, 2012 WL 3590754 (B.A.P. 9th Cir. Aug. 21, 2012).

Further, under the Agreement, DiStefano and his wife agreed to be jointly and severally liable for any losses Endurance suffered. <u>See</u> Agreement ¶ 3.3. The "joint" in "joint and several liability" indicates that the liability is "common to or shared by two or more persons or entities." Joint, Black's Law Dictionary (11th ed. 2019). This suggests that the liability assumed by DiStefano and his wife in the Agreement is not the kind of liability—that of an "individual spouse," <u>see</u> <u>Lee</u>, 889 F.3d at 641 ("Hawaii law exempts [entireties] interests from creditors of an individual spouse.")—against which a tenancy by the entirety protects, <u>see</u> <u>In re Cataldo</u>, 224 B.R. 426, 429 (B.A.P. 9th Cir. 1998) (holding that "[s]ince only the Debtor was liable for the

debt to [creditor], the Property held by both Debtor and [Debtor's wife] as tenants by the entirety was exempt from process under Hawaiian law"); Traders Travel Int'l, Inc. v. Howser, 753 P.2d 244, 246 (1988) (specifying that "one spouse's creditor [cannot] attach the [tenancy by the entirety] property to satisfy a debt" and that "neither spouse can convey an interest alone"); Green v. Kanazawa, No. 16-CV-54, 2018 WL 2293930, at *2 (D. Haw. May 18, 2018) ("[N]either spouse can encumber or convey their respective [property] by himself (or herself) when the [property] is held as tenants by the entirety.") (internal quotation marks omitted); Carson v. Kanazawa, No. 14-CV-544, 2017 WL 3444764, at *14 (D. Haw. Apr. 30, 2017) ("[T]he waiver or release of the right to seek rescission is an encumbrance on the property; and both spouses holding the property as tenants by the entirety must waive or release the right to seek rescission for the waiver or release to be effective."). Based on this assessment of Hawaii law, the joint and several liability consented to by DiStefano and his wife under the Agreement appears to be enough to allow Endurance to gain access to the tenancy by the entirety property, and Endurance appears to have met its initial burden of proof. See Coolbaugh, 250 B.R. at 167 n.9 (describing how the objecting party has the initial burden to "present[] a prima facie case that the exemption has been improperly claimed," at which point "the burden then shifts back to the debtor").

DiStefano cannot meet his responsive burden to show that the "exemption is proper." Id. DiStefano argues that the exemption is proper because the joint liability created by the Agreement is insufficient to pierce the protection provided by the tenancy by the entirety. Appellant Br. at 16–18. As described above, DiStefano asserts that Endurance needed to take some action over and above executing the Agreement if it wanted gain access to the tenancy by the entirety, such as requiring DiStefano and his wife to "sign a separate guaranty that made

clear that they had, *as husband and wife*, joint liability to Endurance," "sign a separate document that expressly recognized that the [tenancy by the entirety] interest in the Hawaii Condo was being made subject to a claim by Endurance, in other words, expressly changing the attributes of the [tenancy by the entirety] agreeing that Endurance could execute and levy on the property," or taking "a mortgage on the Hawaii Condo." Id. at 16–17 (emphasis in original); see also Reply at 5 ("[Endurance] could have had Stanley and Christie: (i) sign a separate guaranty that made clear that they had, *as husband and wife*, joint liability to Endurance; (ii) sign a separate document that expressly recognized that the [tenancy by the entirety] interest in the Hawaii Condo was being made subject to a claim and levy by Endurance; and/or (iii) sign a mortgage on the Hawaii Condo.") (emphases in original). Crucially, however, DiStefano has cited no cases applying Hawaii law to support such a claim, nor has the Court identified any cases suggesting that Hawaii law contains such requirements.

Perhaps recognizing the lack of Hawaii authority, DiStefano relies heavily on several cases applying Pennsylvania law to support his argument that more was required before Endurance could access the tenancy by the entirety property. See Appellant Br. at 13–17. DiStefano principally cites to In re Holler, 463 B.R. 733 (Bankr. E.D. Pa. 2011), aff'd, No. 12-CV-383, 2012 WL 3526466 (E.D. Pa. Aug. 14, 2012), which applied Pennsylvania law in determining that husband and wife debtors who had each executed separate repayment agreements in favor of a lender to their company had not incurred the joint liability necessary for the lender to subject their tenancy by the entirety property to judicial process, id. at 735–38. Indeed, DiStefano's proposed requirements—through which, he suggests, Endurance could have reached the tenancy by the entirety property—are taken directly from the Holler opinion. See

Appellant Br. at 16 (citing <u>Holler</u>, 463 B.R. at 745). But DiStefano's reliance on <u>Holler</u>—and other Pennsylvania cases—is flawed, for two primary reasons.

First, and most fundamentally, <u>Holler</u> does not apply or construe Hawaii law. In a Bankruptcy case such as this, "[w]here the law of a state is 'uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the . . . state would resolve the uncertainty or ambiguity.'" <u>In re W. Pan, Inc.</u>, 372 B.R. 112, 121 (S.D.N.Y. 2007) (quoting <u>Phansalkar v. Andersen Weinroth & Co.</u>, 344 F.3d 184, 199 (2d Cir. 2003)); <u>see also</u> <u>Carson</u>, 2017 WL 3444764, at *14 ("In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue."). When the task before the Court is predicting how the Supreme Court of Hawaii would rule on a given question, the decision of a single bankruptcy court predicting how the Supreme Court of Pennsylvania would rule can be only so persuasive. And while DiStefano urges the Court to follow <u>Holler</u> because Pennsylvania, like Hawaii, is a "Group III" state—meaning that their treatment of tenancies by the entirety is largely similar—he fails to explain why Pennsylvania law would be any more persuasive to the Supreme Court of Hawaii than the law of other Group III states, some of which undercut DiStefano's position. <u>See, e.g.</u>, <u>Ragsdale v. Genesco, Inc.</u>, 674 F.2d 277, 279 (4th Cir. 1982) (applying Virginia law and stating that "[i]t is fundamental that a creditor holding a judgment against two or more persons jointly and severally may execute against real property . . . held by them as tenants by the entirety"). For these reasons, the Court is unsure that <u>Holler</u> can bear the weight DiStefano places on it.[8]

---

[8] For the same reasons, DiStefano's citations to other decisions applying Pennsylvania law, <u>see</u> <u>Blusiewicz v. Rosenfield</u>, 33 Pa. D. & C.2d 470 (Pa. Com. Pl. 1964); <u>A Hupfel's Sons v. Getty</u>, 299 F. 939 (3d Cir. 1924), have limited persuasive power.

Second, even if the Court were inclined to rely on Holler's elaboration of Pennsylvania law when resolving the questions of Hawaii law presented by this case, Holler would still have limited persuasive force because it is distinguishable. As outlined above, Holler addressed a situation in which "the creditor made two loans to Debtors' company" and "Debtors each executed . . . separate, individual, stand-alone, independent guaranties" of those loans. 463 B.R. at 735. Crucially different from this case, however, is that each debtor spouse in Holler was not jointly and severally liable for any of the other spouse's obligations under any of the agreements. Id. at 745. The Holler opinion spends considerable time exploring whether the husband and wife were jointly liable under the guaranty agreements that they each signed, id. at 748 ("Mr. Holler is surety for and jointly liable with [the Hollers' company]. Mrs. Holler is surety for and jointly liable with [the Hollers' company]. Does that mean that Mr. Holler is jointly liable with Mrs. Holler?"), a question that is undisputed in the present case because the Agreement specifically provides for joint liability. Indeed, much of material quoted from Holler in DiStefano's brief concerns the question of whether a pair of spouses can be found jointly liable, see Appellant Br. at 14–15 (discussing four factors used by Holler to determine whether spouses are subject to joint liability),[9] rather than the subsequent question of what effect such joint liability would have on a tenancy by the entirety. Because the Holler court concluded that the spouses were not jointly liable to the creditors, the case has limited persuasive value as to what effect the joint liability here has on DiStefano and his wife's tenancy by the entirety.

---

[9] As Endurance points out, "the four-part test proffered by [DiStefano] was merely one of three [alternative] analyses undertaken by the bankruptcy court in Holler" and "the Pennsylvania district court, on appeal, did not apply the . . . proposed four-part test." Appellee's Br. at 10 (citing In re Holler, No. 12-CV-383, 2012 WL 3526466, at *2–4 (E.D. Pa. Aug. 14, 2012)).

For these reasons, DiStefano has not convinced the Court that Hawaii law requires the additional measures described in Holler before a creditor can reach a debtor's tenancy by the entirety interest.[10] Case law from other jurisdictions—in addition to undermining DiStefano's "extreme reliance on" Holler as alluded to above, Appellee Br. at 9—buttresses the Court's conclusion. For example, under Maryland law,[11] "to the extent the debtor and the nonfiling spouse are indebted jointly, property owned as a tenant by the entireties may not be exempted from an individual debtor's bankruptcy estate under § 522(b)(2)(B)." Sumy v. Schlossberg, 777 F.2d 921, 932 (4th Cir. 1985). Under Michigan law, "ordinary creditors cannot reach interests in entireties property," but "[j]oint creditors . . . can." Matter of Grosslight, 757 F.2d 773, 776 (6th Cir. 1985). And under Florida law, "[p]roperty held as [tenancy by the entirety] is exempt from the claims of individual creditors . . . , although a bankruptcy trustee may reach [tenancy by the entirety] property to the extent of joint debts of both spouses." In re Uttermohlen, 506 B.R. 142, 145 (M.D. Fla. 2012), aff'd, 525 F. App'x 916 (11th Cir. 2013); see also In re Monzon, 214 B.R. 38, 44 (Bankr. S.D. Fla. 1997) (explaining that, where husband and wife jointly owed credit card debt, their tenancy by the entireties property was subject to process by the bankruptcy court to

---

[10]  This is why DiStefano's argument that Endurance cannot access the tenancy by the entirety property because it declined DiStefano's offer of a mortgage on the that property during the negotiation of the Agreement, Appellant Br. at 16–17; Reply at 5–6, is unavailing. As the Court reads Hawaii law, no such mortgage was required if DiStefano and his wife agreed to joint liability, as they subsequently did.

[11]  Maryland is another "Group III" jurisdiction. Bankruptcy Order at 14.

the extent of the joint debt).[12] There is nothing to suggest that "joint" in these cases[13] means anything other than ordinary "joint liability," or that the spouses in these cases had agreed to repay their obligations specifically as "husband and wife" or other similar formulations.

DiStefano's remaining arguments are also unavailing. Most notably, DiStefano charges that the Bankruptcy Court erred by failing to liberally construe the exemption statute. Appellant Br. at 13 (citing Eagan v. Household Finance Corp., 16 B.R. 439, 441 (Bankr. N.D.N.Y. 1982) ("[b]eing a remedial statute, the exemption provisions of the Code should be liberally construed")); Reply at 2–3. But while DiStefano is undoubtedly correct in his description of the law, see e.g., In re Glenn, 430 B.R. 56, 58 (Bankr. N.D.N.Y. 2010) ("Exemption statutes are to be construed liberally in favor of a debtor."), his application of the law is wide of the mark. The rule favoring "liberal construction" of exemptions is a rule of "statutory construction," see In re Phillips, 485 B.R. 53, 60 (Bankr. E.D.N.Y. 2012), and comes into play when a court must resolve an ambiguous exemption statute, see, e.g., In re Delaney, 268 B.R. 57, 61 (D. Vt. 2001) ("[T]o the extent the [section of the bankruptcy code] at issue here is ambiguous, its ambiguity should be resolved in favor of the Delaneys."); In re Caraglior, 251 B.R. 778, 782 (Bankr. D.

---

[12]   DiStefano attempts to distinguish this case (and others), by pointing out that the Monzon spouses were "primarily liable" for the credit card debt, whereas he and his wife are only indemnitors under the Agreement, i.e. are not the principal obligor. Appellant Br. at 9; Reply at 1, 6. But other than under Holler's somewhat idiosyncratic approach—which the Court has already explained is unpersuasive—it is unclear why the primary/secondary liability distinction matters in determining whether spouses' joint obligations allow access to their entireties' property. DiStefano has pointed the Court to no other cases explaining the significance of such a distinction.

[13]   Or others. See, e.g., Ragsdale, 674 F.2d at 279; In re Seidel, 38 B.R. 264, 265 (Bankr. D. Md. 1984) ("The entireties property is simply not exempt or immune from process by a joint creditor under Maryland law."); In re Hovatter, 25 B.R. 123, 124–25 (Bankr. D. Del. 1982) (holding that "entireties property is subject to attachment and execution process by joint creditors of a husband and wife. The property is immune only from the claim of the creditor of one of the tenants."); In re McQueen, 21 B.R. 736, 737 (Bankr. D. Vt. 1982) ("[I]t is generally held that the estate by the entirety is liable for the joint debts of both spouses . . . .").

Conn. 2000) (applying debtor-favoring liberal construction rule where relevant section of Connecticut exemption statute was ambiguous); see also Reply at 3 (citing Parrotte v. Sensenich, 22 F.3d 472, 476 (2d Cir. 1994) ("[E]xemption statutes are remedial in nature and "ought to receive a liberal construction in favor of the debtor.")). This rule is of no help to DiStefano though, because this case does not turn on the ambiguity of any statute. Indeed, it is undisputed that DiStefano's tenancy by the entirety interest in the Condo—to the extent it is not encumbered by any joint obligation on the part of DiStefano and his wife—falls within the ambit of the exemptions created by 11 U.S.C. § 522(b)(3)(B) and Haw. Rev. Stat. § 509-2. The question in this case, rather, is whether DiStefano and his wife have taken joint action sufficient to allow Endurance to initiate process against the Condo, a question that is answered by Hawaii common law, rather than either of the above statutes. See Sawada, 561 P.2d at 1294 (resolving the question of "whether the interest of one spouse in real property, held in tenancy by the entireties, is subject to levy and execution by his or her individual creditors" based on common law precepts, without relying on Haw. Rev. Stat. § 509-2); see also Appellant Br. (not arguing that § 522(b)(3)(B) and Haw. Rev. Stat. § 509-2 resolve the "joint action" question); Appellee Br. (same); Reply at 2–3 (same). Thus, the rule requiring liberal construction of exemption statutes does not aid DiStefano.

For all these reasons, the Court holds that the joint and several liability undertaken by DiStefano and his wife when they consented to the Agreement satisfies Sawada's joint action requirement. As the Bankruptcy Court noted, while DiStefano's arguments are "creative," they lack support in Hawaii law. Bankruptcy Order at 15. Therefore, the Court agrees with the Bankruptcy Court and affirms that court's decision.

### B.  Whether DiStefano's Discharge Defeats Endurance's Objection

In the alternative, DiStefano asks the Court to reverse the Bankruptcy Court and overrule Endurance's Objection because, subsequent to filing this appeal, DiStefano was discharged by the Bankruptcy Court.[14] Appellant Br. at 18–21; Reply at 6–8. DiStefano explains that because he "has now been discharged[,] . . . he is no longer liable to Endurance . . . [;] therefore, [there is] no joint liability upon which to base any claim to the [tenancy by the entirety] interest because [DiStefano] is no longer liable to Endurance along with his wife." Appellant Br. at 19. Endurance objects to the merits of this argument, Appellee Br. at 17–22, but also, and more fundamentally, that the argument is improper because it has been raised for the first time on appeal and relies on facts outside the appellate record, id. at 14–17. On this issue as well, the Court agrees with Endurance.

"[G]enerally[,] issues that were not raised before the bankruptcy court may not be raised on appeal." In re Salander, 503 B.R. 559, 569 (S.D.N.Y. 2013); see also In re Grubb & Ellis Co., 523 B.R. 423, 442 (S.D.N.Y. 2014) ("[D]istrict courts considering appeals from bankruptcy court refuse to consider arguments that were not properly presented to the bankruptcy court."). "However, a federal court may consider such arguments when (i) manifest injustice would occur; or (ii) the argument is clearly presented by the record." Boyce v. Citibank, N.A., No. 15-CV-7408, 2017 WL 87066, at *5 (E.D.N.Y. Jan. 10, 2017) (internal quotation marks omitted), aff'd sub nom. In re Boyce, 710 F. App'x 44 (2d Cir. 2018). Here, as Endurance points out, DiStefano "does not argue that an exception is necessary to remedy an obvious injustice." Appellee Br. at

---

[14]  "Bankruptcy Code Section 524(a)(2) states that '[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.'" In re Homaidan, 596 B.R. 86, 107 (Bankr. E.D.N.Y. 2019) (quoting 11 U.S.C. § 524).

16; see also Appellant Br. (failing to argue that if the Court declines to consider this argument manifest injustice will result); Reply (same). Nor can he claim that the argument is clearly presented by the record when, in order to make the argument, DiStefano must first ask the Court to take judicial notice of several facts outside the record on appeal. See Appellant Br. at 18–19. Where neither of these prongs is squarely met, the Court is reluctant to adjudicate this dispute without first having the benefit of the Bankruptcy Court's expertise and wary of departing from the general rule that, in the bankruptcy context, it serves not as a court of first view but rather a court of review. This is all the more so because, as DiStefano points out, the factual circumstances relevant to this issue changed even between the filing of the Appellant Brief and the Reply. Reply at 6.

In the face of such an evolving record, and given the concerns already described, the Court declines to consider this argument that was not raised below. For this reason, the Court has no need to pass on the merits of the argument.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Bankruptcy Order (Dkt. No. 3-24) is **AFFIRMED** and this appeal is **DISMISSED**; and it is further

**ORDERED**, that the Clerk shall close this case; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      August 07, 2020
                Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge